```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
ANTHONY SANFILIPPO,                            :
                         Plaintiff,            :
                                               :        **MEMORANDUM & ORDER**
           -against-                           :          10-CV-0987 (DLI)
                                               :
MICHAEL J. ASTRUE,                             :
Commissioner of Social Security,               :
                                               :
                         Defendant.            :
-----------------------------------------------------------------x
```
**DORA L. IRIZARRY, United States District Judge:**

Plaintiff Anthony Sanfilippo filed an application for disability insurance benefits ("DIB") under the Social Security Act ("Act") on August 17, 2007. Plaintiff's application was denied initially and on reconsideration. Plaintiff testified at a hearing held before an Administrative Law Judge ("ALJ") on July 29, 2008. By a decision dated October 1, 2008, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act. On December 28, 2009, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. Plaintiff filed the instant action seeking judicial review of the denial of benefits. The Commissioner moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), seeking affirmation of the denial of benefits. Plaintiff cross-moves for judgment on the pleadings, seeking remand for further administrative proceedings.

For the reasons set forth below, the Commissioner's motion is denied, Plaintiff's motion is granted, and this matter is remanded to the Commissioner for further administrative proceedings consistent with this Order.

1

## DISCUSSION

### A. Standard of Review

A district court, reviewing the final determination of the Commissioner, must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *See Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998). The former determination requires the court to ask whether the claimant has had "a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the Act." *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982) (internal quotations omitted). The latter determination requires the court to ask whether the decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

### B. Disability Claims

To receive disability benefits, claimants must be disabled within the meaning of the Act. *See* 42 U.S.C. § 423(a), (d). ALJs must adhere to a five-step inquiry to determine whether a claimant is disabled under the Act as set forth in 20 C.F.R. § 404.1520. If at any step, the ALJ finds that the claimant is either disabled or not disabled, the inquiry ends there. First, the claimant is not disabled if he or she is working and performing "substantial gainful activity." 20 C.F.R. § 404.1520(b). Second, the ALJ considers whether the claimant has a severe impairment, without reference to age, education or work experience. Impairments are severe when they significantly limit a claimant's physical or mental "ability to conduct basic work activities." 20 C.F.R. § 404.1520(c). Third, the ALJ will find the claimant disabled if his or her impairment meets or

equals an impairment listed in Appendix 1.[1]  *See* 20 C.F.R. § 404.1520(d).

If the claimant does not have a listed impairment, the ALJ makes a finding about the claimant's residual functional capacity ("RFC") in steps four and five.  20 C.F.R. § 404.1520(e), (f).  In the fourth step, the claimant is not disabled if he or she is able to perform "past relevant work."  20 C.F.R. § 404.1520(e).  Finally, in the fifth step, the ALJ determines whether the claimant could adjust to other work existing in the national economy, considering factors such as age, education, and work experience.  If so, the claimant is not disabled.  20 C.F.R. § 404.1520(f).  At this fifth step, the burden shifts to the Commissioner to demonstrate that the claimant could perform other work.  *See Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002) (citing *Carroll v. Sec'y of Health & Human Servs*, 705 F.2d 638, 642 (2d Cir. 1983)).

**C.      ALJ's Decision**

ALJ Jordan took account of the five-step sequential analysis laid out in 20 C.F.R. § 404.1520.  First, ALJ Jordan found that Plaintiff had not engaged in substantial gainful activity since June 30, 2006, the date of the alleged onset of disability.  (Record at 10.)  At step two, ALJ Jordan determined that Plaintiff had severe impairments of traumatic femoral neuropathy, carpel tunnel syndrome, obesity, and disorders of the right knee and back.  (*Id.*)  At step three, ALJ Jordan found that none of Plaintiff's impairments, either in isolation or in combination, met or equaled impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id.* at 12.)  At step four, ALJ Jordan determined that Plaintiff possessed the RFC to "perform less than a full range of light work" and ultimately Plaintiff could perform "his past relevant work as a telecommunications sales and advertisement person as it is generally performed in the national

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

economy." (*Id.* at 17.)  At step five, ALJ Jordan found, based on the testimony of a vocational expert, and taking into consideration Plaintiff's age, education, work experience, and RFC, that Plaintiff was also able to work as an office helper and library helper. (*Id.*)  In short, ALJ Jordan found that Plaintiff was not disabled from June 30, 2006 through October 1, 2008, the date of the decision. (*Id.*)

**D.     Application**

The Commissioner seeks judgment on the pleadings, contending that the ALJ's decision is supported by substantial evidence and based upon sound legal conclusions.  Plaintiff opposes, cross-moves for judgment on the pleadings, and seeks remand for further administrative proceedings, arguing that: (1) the ALJ gave improper weight to Plaintiff's treating physician; (2) the ALJ followed "unreliable" vocational expert testimony; and (3) there exists new and material evidence not considered by the ALJ.

**1.     Treating Physician Rule**

A treating source's medical opinion regarding the nature and severity of an impairment is given controlling weight when supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993) (citing 20 C.F.R. § 404.1527(d)).  When a treating source's opinion is not given *controlling* weight, the proper weight accorded depends upon several factors, including:  (i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist. *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998) (citing 20 C.F.R. § 404.1527(d)).  Additionally, the ALJ must always give good reasons in his decision for the weight accorded to a

treating source's medical opinion. *Id*. There are, however, certain decisions reserved to the Commissioner. Such decisions include the determination that a claimant is disabled or unable to work. 20 C.F.R. § 404.1527(e)(1). That means that the Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability. "A treating physician's statement that the claimant is disabled cannot itself be determinative." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).

The ALJ did not give controlling weight to the opinion of Plaintiff's treating neurologist, Dr. Glenn Waldman, finding that his opinion was "not supported by objective medical evidence," nor was it "consistent with the other evidence of record." (Record at 16.) Dr. Waldman diagnosed Plaintiff with traumatic femoral neuropathy[2] and lumbar radiculopathy,[3] and in his final report prior to the hearing before the ALJ, found that Plaintiff "can sit for a total of four hours within an eight-hour workday but no more than one hour at one time, cannot stand continuously for any length of time, can walk for a total of one hour but no more than 4-5 blocks continuously, can occasionally lift and carry up to 10 pounds, never stoop, squat, climb or reach, and needs to intermittently lie down during the day to alleviate pain as needed." (*Id.* at 14-16.)

ALJ Jordan decided to give Dr. Waldman's opinion "little weight." (*Id.* at 16.) However, despite his brief consideration of some of the applicable § 404.1527(d) factors, ALJ Jordan did not fulfill his duty to consider all of the factors. *See Clark*, 143 F.3d at 118 (§ 404.1527(d) factors

---

[2] Pathological changes in the nerves of the thigh; nerve disorder involving the femoral nerve. 2 CH-F J.E. Schmidt, *Attorneys' Dictionary of Medicine and Word Finder* F-51 (Matthew Bender, 2010).

[3] An intervertebral disk (a disk between adjacent vertebrae) in which the pulpy or soft center has been pushed out and through the surrounding tougher part, thus forming a protruding mass. 3 G-L J.E. Schmidt, *Attorneys' Dictionary of Medicine and Word Finder* H-115 (Matthew Bender, 2010) (cited as Herniated Disk).

"must" be considered when a treating physician's opinion is not given controlling weight). For example, although ALJ Jordan generally noted that Dr. Waldman has been Plaintiff's physician "since 2007," the ALJ failed to adequately acknowledge the frequency, nature and extent of the relationship beyond the January 3, 2007 visit, even though the record indicates at least seven separate visits from January 2007 to July 2008. (Record at 174-83, 248-77.) Further, ALJ Jordan makes no mention of Dr. Waldman being a neurologist specifically, or a specialist generally. More weight is generally given to the "opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(d)(5). This is especially relevant in this case because Plaintiff was diagnosed with a neurological condition by a treating neurologist. An ALJ "must" consider the § 404.1527(d) factors, and ALJ Jordan's failure to do so mandates remand.

2.   **Vocational Expert**

Where a claimant's impairments are such that he cannot perform his past work, the burden shifts to the Commission to prove that there are other jobs that the claimant is capable of performing. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999). The Commissioner is required to "produce evidence to show the existence of alternative substantial gainful work which exists in the national economy," taking account of age, education and training. *Id.* at 77-78. The Commissioner can meet his burden by resorting to the applicable medical vocational guidelines, but when the guidelines fail to encompass the extent of claimant's physical limitations, the Commissioner must seek the testimony of a vocational expert, or other similar evidence, that there are jobs in the national economy that the claimant is able to obtain and perform. *Id.* at 78. The vocational expert can rely on information contained in government and other publications, including the Dictionary of Occupational Titles ("DOT"). *See* 20 C.F.R. § 404.1566(d).

However, the ALJ has the responsibility to determine the claimant's capabilities based on all of the evidence. *See Dumas v. Schweiker*, 712 F.2d 1545, 1554 (2d Cir. 1983).

In reaching the conclusion that Plaintiff could perform other work, ALJ Jordan relied on the testimony of vocational expert Andrew Pasternak. ALJ Jordan laid out a pair of hypothetical scenarios for the vocational expert to consider (Record at 63-64), and the vocational expert testified that Plaintiff could work as an office helper, library helper, and inside messenger clerk. (Record at 65.) The vocational expert later testified that a claimant in the hypothetical position laid out by ALJ Jordan could not perform the job of an inside messenger clerk because it requires frequent fingering and handling. (Record at 67.)

Plaintiff asserts that ALJ Jordan erred in relying on the testimony of the vocational expert, arguing that the testimony was "unreliable" because it was inconsistent with the Dictionary of Occupational Titles ("DOT"), the expert did not own a copy of the Selected Characteristics of Occupations ("SCO"), and he was unfamiliar with the SCO requirements of the jobs identified for Plaintiff. The Commissioner argues that "the ALJ appropriately resolved the inconsistency by obtaining additional information from the vocational expert regarding his knowledge of the jobs . . . ." (Def. Reply at 3.)

Social Security Ruling 00-4p states the standards for the use of a vocational expert as follows:

> Occupational evidence provided by a VE or VS [vocational expert or vocational specialist] generally should be consistent with the occupational information supplied by the DOT. When there is apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such a consistency.

> Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

Here, the inconsistencies between the vocational expert's opinion and the DOT were resolved on the record. First, the vocational expert discussed his disagreement with the DOT and SCO definition of office helper by explaining that "the range of work . . . covered by this particular job [is so vast] it may not require frequent fingering and handling." (Record at 67.) ALJ Jordan then addressed the inconsistency, and the vocational expert testified that the number of jobs available to an individual with the RFC stated would be reduced by two-thirds, *i.e.*, somewhere between 2,000 and 10,000 jobs remaining. (Record at 68.) The vocational expert attributed his opinion to "experience over the years of working in situations with various office jobs." (Record at 68.) The vocational expert also addressed his disagreement with the SCO regarding library helper, claiming to have "very intimate knowledge and having worked in a project with the Queens Borough Public Library . . . ." (Record at 69.) ALJ Jordan inquired of the expert as to the extent his previous estimate of available jobs would be reduced. Again, the vocational expert reduced his estimate by two-thirds. (Record at 70-71). Thus, the ALJ resolved the conflicts on the record and did not commit error in relying on the expert's testimony. On remand, if a vocational expert again provides evidence, the ALJ is directed to again comply fully with his duties under SSR 00-4p.

### 3. Evidence Not Before the ALJ

Again, because this matter is being remanded, the court need not address the evidence before the appeals council (June 26, 2009 MRI of Plaintiff's right hip and March 25, 2009 report from Dr. Andrew Brown) or the new evidence submitted to this court (August 2, 2010 report by

8

Dr. Asaf Gave and December 1, 2009 report by Dr. Lana Kang), none of which was submitted to the ALJ in the original hearing. On remand, the ALJ is directed to consider this evidence to the extent warranted.

## CONCLUSION

For the reasons set forth above, the Commissioner's motion is denied, Plaintiff's motion is granted, and this matter is remanded to the Commissioner, pursuant to the fourth sentence of 42 U.S.C. § 405(g), for further administrative proceedings consistent with this Order.

SO ORDERED

DATED:     Brooklyn, New York
               July 5, 2011

                                                _____/s/_____
                                                        DORA L. IRIZARRY
                                                 United States District Judge